IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| TIARA WILLIAMSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:12-CV-1299 |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Plaintiff Tiara Williamson brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment.

### I. PROCEDURAL HISTORY

Ms. Williamson's mother protectively filed an application for supplemental security income on her behalf in September of 2004. (Tr. 267-70.)[2] The application was denied initially and upon reconsideration. (*Id.* at 206-07.) After three hearings and two remands, the ALJ denied Ms. Williamson's claim and the Appeals Council denied further review, making the ALJ's determination the Commissioner's final decision for review. (*Id.* at 17-34.)

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the administrative record.

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue here is not whether Ms. Williamson is disabled but whether the finding that she is not disabled is supported by substantial evidence according to the applicable law. *Id.*

## III. THE ALJ'S DECISION

The ALJ analyzed Ms. Williamson's claim both as a minor and as an adult. The ALJ began with the three-step process to determine if a child is disabled. 20 C.F.R. § 416.924; *see Bryant ex rel. Bryant v. Barnhart*, 63 F. App'x 90, 92–93 (4th Cir. 2003) (unpublished). At step one, the ALJ found that Ms. Williamson had not engaged in substantial gainful activity since the date of application. (Tr. 22.) At step two, the ALJ found that before turning eighteen, Ms. Williamson had these severe impairments: bipolar disorder, attention deficit hyperactivity disorder, depression, anti-social personality disorder, and oppositional defiant disorder. (*Id.*) Where, as here, an ALJ finds that a minor has a severe impairment, he must determine if the impairment meets, medically equals, or functionally equals a listing. *See* 20 C.F.R. 416.924(d). At step three, the ALJ found that before turning eighteen, Ms. Williamson's impairments did not meet or medically equal ("meets or equals analysis") the requirements of a listing. (Tr. 22.) In

concluding that her impairments did not functionally equal a listing, the ALJ found marked limitations in interacting and relating with others; no limitations in self-care, health and physical well-being; and less than marked limitations in all other categories. (*Id.* at 25-29.)

Next, the ALJ evaluated whether Ms. Williamson was disabled as an adult. 20 C.F.R. § 416.920; *see Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined that she had not developed any new impairments since attaining age eighteen. (Tr. at 29.) The ALJ also found that since attaining age eighteen, Ms. Williamson did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id*.) The ALJ then determined that since attaining the age of eighteen, Ms. Williamson had the residual functional capacity ("RFC") to perform medium work if limited to (1) simple, one or two-step instructions, (2) involving well-set defined routines requiring only minimal occupational changes in job duties, (3) limited to the performance of simple, routine, repetitive tasks in a supervised, low stress environment requiring few decisions, (4) and limited to superficial interpersonal contact and no direct dealing with the public. (*Id.* at 30-33.) At the fourth step, the ALJ found Ms. Williamson had no past relevant work. (*Id.* at 33.) At step five, the ALJ decided that there were jobs which she could perform consistent with her RFC, age, education, and work experience. (*Id*. at 33-34.)

### IV. ISSUES AND ANALYSIS

Ms. Williamson first argues that the ALJ erred by failing to find that she met Listing 112.08. Second, she argues that the ALJ erred by finding her deficiencies in the domains of "acquiring and using information" and "attending and completing tasks" to be less than marked.

Third, Ms. Williamson contends that the ALJ erred by giving too little weight to the opinion of consulting examiner Dr. Anthony Smith.

### A. The ALJ's Listing 112.08 Analysis Is Supported by Substantial Evidence.

Ms. Williamson contends that "the only real question under Listing 112.08" is whether her "pattern of maladaptive behavior is deeply ingrained." While this is one thing that has to be shown before Listing 112.08 applies, that is not a decision made in a vacuum, nor is it the only requirement. In addition to the showing of deeply ingrained pattern, the child must *also* demonstrate marked limitations in at least two of the following categories: (1) cognitive/communicative functioning; (2) social functioning; (3) personal functioning; or (4) difficulties in maintaining concentration, persistence, or pace. *Id.* at Pt. B ("Paragraph B"), *incorporating in part* ¶B2 of Listing 112.02. Ms. Williamson identifies no evidence establishing marked limitations in two of these categories, and a claimant cannot satisfy Listing 112.08 by only demonstrating that she has deeply ingrained maladaptive behaviors.[3]

Ms. Williamson contends further that the ALJ committed fatal error because he failed to cite any evidence in concluding that she did not meet Listing 112.08. She also essentially contends that the ALJ's decision at this step was so vague as to preclude judicial review. Both arguments fail. The ALJ is required to identify the relevant listed impairments and compare each of the listed criteria to the evidence of the claimant's symptoms. *Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986). Yet, this is not "an inflexible rule requiring an exhaustive point-

---

[3] Ms. Williamson also seems to contend that because the ALJ found that her anti-social personality disorder was severe, she necessarily meets Listing 112.08. Yet, as noted, if an ALJ finds that a minor has a severe impairment, he must then determine if the impairment meets, medically equals, or functionally equals a listing. *See* 20 C.F.R. § 416.924(d). As defendant correctly points out, Ms. Williamson's interpretation of the significance of a severity finding for anti-social personality disorder would moot all further steps in violation of the regulations.

by-point discussion in all cases." *Russell v. Chater*, 60 F.3d 824, 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished). "Meaningful review may [still] be possible . . . where the ALJ discusses in detail the evidence presented and adequately explains [himself]." *Johnson v. Astrue*, No. 5:08–CV–515–FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009) (unpublished) (collecting cases). In fact, a court may look to other steps for substantial evidence. *See, e.g.*, *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011); *McCartney v. Apfel*, 28 F. App'x 277, 279–80 (4th Cir. 2002); *Kiernan v. Astrue*, No. 3:12CV459–HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished).

Here, the ALJ addressed the evidence on the record and gave reasons why no listing was met. The ALJ accurately concluded that no acceptable medical source had indicated findings equivalent in severity to the criteria of any listed impairment, (Tr. 22), and correctly pointed out that his conclusion at this step was supported by the state agency consultants. (*Id.,* referencing Tr. 121-26; 137-42.) The ALJ accurately noted that her mental status exams were generally normal, (*id.* at 25), and accurately stated that Ms. Williamson had not been hospitalized for psychiatric treatment and had received limited out-patient care. (*Id.* at 127-36, 292-324, 364-91.) Finally, the ALJ made detailed findings elsewhere in his order concerning Ms. Williamson's mental impairments, which provide additional support for the conclusion that Ms. Williamson did not meet Listing 112.08.

**B. The ALJ's Domain Analysis Is Supported by Substantial Evidence.**

A child's functioning is assessed by looking at six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-

being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal a listing, the child must have marked limitations in at least two of the six domains or an extreme limitation in at least one. *Id.* § 416.926a(a). The only marked limitation the ALJ attributed to Ms. Williamson was her ability to interact and relate with others. (Tr. 27.) Ms. Williamson contends that the ALJ erred in concluding that she had less than marked limitations in (1) acquiring and using information and (2) attending to and completing tasks.

**Acquiring and Using Information**: This domain considers how well a child is able to acquire or learn information, and how well the child uses the information she has learned. 20 C.F.R. 416.926a(g). Two important, nonexclusive factors in assessing this domain are a child's grades and aptitude or achievement tests. SSR 09-3p, 2009 WL 396025, at *3 (Feb. 17, 2009).

Here, in concluding that Ms. Williamson's ability to acquire and use information was less than marked, the ALJ reasoned that (1) she attended regular classes and made academic progress, (2) had attained a full-scale IQ score of 88, (3) her teacher reported she had no difficulty comprehending and doing math problems, and (4) her teacher reported that she was capable, but did not apply herself. (Tr. at 26 *citing* Tr. 53-62, 143-56.) The two state agency medical consultants also opined that Ms. Williamson had less than marked limitations in this domain. (Tr. 123, 139.) The ALJ gave substantial weight to their findings. (*Id.* at 25.) This is sufficient evidence to support the ALJ's determination in this domain.

Ms. Williamson contests the ALJ's conclusion that she "made academic progress" because Ms. Williamson was almost last in her class. That argument requires examining the ALJ's decision in a vacuum, which is inappropriate. The ALJ not only concluded that Ms. Williamson "made academic progress" but also accurately explained that she "was able to

6

perform at grade level for several years, in regular education classes." (Tr. 25-26; 115-16.) The ALJ thoroughly described Ms. Williamson's academic record; noted that she repeated three grades (kindergarten, ninth, and tenth); that she attended regular classes, and that she was referred for evaluation for exceptional children services in 2005; accurately stated that her school records were replete with behavioral problems, disciplinary actions, and absences; and pointed out that her ninth grade English teacher concluded that she was able but did not apply herself to class work. (Tr. at 24 referencing Tr. 53-62, 89-101, 107, 112-18, 275-82.) While all this evidence shows that Ms. Williamson had difficulties in this domain, it also provides substantial evidence for the ALJ's determination that her limitations were less than marked and due, at least in part, to her many absences from class and unwillingness to apply herself to class work. It is the ALJ's job to weigh the evidence, not this Court's, and the evidence to which Ms. Williamson points in her brief is insufficient to demonstrate reversible error.

**Attending and Completing Tasks**: This domain considers how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the pace at which she performs activities and the ease of changing activities. 20 C.F.R. 416.926a(h). The benchmarks set forth for normal functioning in this domain for a child between the ages of twelve and eighteen are the ability to (1) pay attention to longer presentations and discussions, maintain concentration while reading, and independently plan and complete long-range academic projects, (2) organize materials and plan time to complete assignments, and (3) maintain attention on longer tasks, and not be unduly distracted of or by peers. 20 C.F.R. § 416.926a(h)(2)(v); *id.* § 416.926a(h)(3) (setting forth examples of limited,

7

though not necessarily marked or extreme, functioning); SSR 09–4p, 2009 WL 396033, at *2 (S.S.A. Feb. 18, 2009) (describing analysis of this domain).

In concluding that Ms. Williamson's ability to attend and complete tasks was less than marked, the ALJ accurately recited evidence from the record that (1) her teacher noted that she had difficulty paying attention, focusing on assignments, changing activities, organizing assignments, completing assignments, and working without distracting others, but that Ms. Williamson was capable of controlling her actions, and (2) when taking an intelligence test, she was not medicated, yet was cooperative, methodical, articulate, tried her best, gave thought to her answers, did not show impulsivity, and was not easily distracted, though it did take her longer to process information. (Tr. 26 referencing Tr. 53-62, 143-56.) The two state agency medical consultants also opined that Williamson does not have a marked limitation in this domain. (Tr. at 25 citing Tr. 123, 139.) The ALJ gave substantial weight to their findings. (*Id.*) This is sufficient evidence to support a finding of less than marked limitations.

Ms. Williamson's arguments to the contrary are not convincing. She contends that the ALJ gave too much weight to a questionnaire filled out by her ninth grade English teacher which was neither signed nor dated and which was not very specific. First, the issue of how much weight to give to evidence is for the ALJ, not this Court. More importantly, the questionnaire was only one piece of evidence relied upon by the ALJ, who also relied on opinions of state agency physicians and on Ms. Williamson's ability to attend to and complete her intelligence test. As noted, this is substantial evidence.

**C. The ALJ Did Not Reversibly Err in Handling Dr. Smith's Opinion.**

On May 14, 2008, after turning eighteen, Ms. Williamson presented to Dr. Anthony J. Smith for a consultative examination and an IQ test. (Tr. 285.) Dr. Smith opined that Ms. Williamson's ability to perform simple routine, repetitive tasks and maintain concentration were limited by her inability to interact with co-workers and respond to supervision. (*Id.* at 287-88.) He noted further that her impairments make it "difficult for her to function in many work environments" and that "[s]he would likely be unable to interact with peers and co-workers and respond appropriately to supervision." (*Id.*) Dr. Smith opined that Ms. Williamson had moderate difficulties in her ability to understand, remember, carry out, and make judgments regarding complex instructions, but no difficulty carrying out simple instructions, (*id.* at 289), that she had moderate difficulties in her ability to interact with coworkers and respond to changes in a routine work setting, and that she had marked limitations in her ability to interact with a supervisor. (*Id.* at 290.) The ALJ gave "some weight . . . , insofar as it is consistent with the longitudinal record" to these opinions. (Tr. 32.)

Ms. Williamson contends that the ALJ's decision should be reversed because he only attributed "some weight" to Dr. Smith's opinion. As a consulting physician who examined, but did not treat, Ms. Williamson, Dr. Smith's opinions cannot, as a general matter, qualify for controlling weight in the manner that a treating physician's opinions might. *See Koonce v. Apfel*, No. 98–1144, 166 F.3d 1209, 1999 WL 7864, at *3 (4th Cir. 1999) (unpublished). Moreover, although "an examining physician's opinion is generally accorded more weight than a non-examiner's opinion, if an opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Harder v.*

9

*Commissioner of Soc. Sec.*, No. 6:12CV69, 2014 WL 534020, at *4 (W.D.Va. Feb. 10, 2014) (unpublished). In describing the longitudinal record and determining Ms. Williamson's RFC, the ALJ accurately noted that she had limited outpatient mental health treatment, frequent non-compliance with both medication and therapy, mental health examination findings exhibiting at best mild to moderate symptoms, little evidence of thought disorder despite her bad judgment, and no inpatient mental health treatment. (Tr. 31-32 referencing Tr. 292-324, 364-91, 433-43.) These are sufficient reasons for the ALJ to attribute only "some weight" to Dr. Smith's opinions.

Ms. Williamson further contends that the ALJ erred by not expressly mentioning Dr. Smith's opinion concerning her marked limitation in her ability to interact with a supervisor or incorporate this limitation into the RFC or a hypothetical to the VE. The ALJ is not necessarily required to discuss "every single finding in each piece of evidence in the record," *Arnett v. Colvin*, No. 1:10–CV–703, 2013 WL 4768184, at *4 (M.D.N.C. Sept. 5, 2013) (unpublished) (citing *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)), and the ALJ accurately recognized Dr. Smith's opinion that Ms. Williamson's "poor interpersonal skills, comprehension difficulties, and low frustration tolerance might make it difficult for her to function in many work environments." (Tr. 32.) The ALJ also accounted for Ms. Williamson's limitation in interacting with supervisors by restricting her to the following (1) simple, one or two-step instructions, (2) in a well-defined routine with only minimal occupational changes, (3) involving only simple, routine, repetitive tasks in a supervised, low stress environment, requiring few decisions, and (4) superficial interpersonal contact and no direct dealing with the public. (Tr. 30-31.)

Similarly, the ALJ adequately accounted for Ms. Williamson's limitations in the hypothetical to the vocational expert ("VE"), who was asked to assume a person whose

"interpersonal contact should be superficial" and who should have "no direct dealing with the public." (Tr. 520.) The VE indicated that there were jobs available for such a person. (*Id.* at 520-21.) The inclusion in the hypothetical of only superficial interpersonal contact necessarily encompasses the limitation of superficial interpersonal contact with supervisors set forth in the RFC. An ALJ must "fairly set out all of [the] claimant's impairments" in a hypothetical, *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989), and the ALJ here met that standard. There was no reversible error here.

## V. CONCLUSION

The Commissioner's decision is supported by substantial evidence. Therefore, it is **ORDERED** that Ms. Williamson's Motion for Judgment on the Pleadings (Doc. 17) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 23) is **GRANTED**, and the final decision of the Commissioner is upheld. A Judgment dismissing this action will be entered contemporaneously with this Order.

This 14th day of August, 2014.

_____
UNITED STATES DISTRICT JUDGE